Richard B. Benenson, Esq.
Maryland Bar No. 9612170066
BROWNSTEIN HYATT FARBER SCHRECK, LLP
1155 F Street N.W., Suite 1200
Washington, DC 20004
Telephone: 202.296.7353
Facsimile: 202.296.7009
rbenenson@bhfs.com

Patrick J. Reilly, Esq. (*pro hac vice*)
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone: 702.382.2101
Facsimile: 702.382.8135
preilly@bhfs.com

Sarah J. Auchterlonie, Esq. (*pro hac vice*)
BROWNSTEIN HYATT FARBER SCHRECK, LLP
675 15th Street, Suite 2900
Denver, Colorado 80202-4287
Telephone: 303.223.1100
Facsimile: 303.223.1111
sauchterlonie@bhfs.com

*Attorneys for WorldRemit Corp.*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

# UNITED STATES DISTRICT COURT

# DISTRICT OF MARYLAND

SUNDAY EGAHI, individually and on behalf of similarly-situated persons,

Plaintiff,

v.

WORLDREMIT CORP.,

Defendant.

Case No. 1:24-cv-03728-JKB

**MOTION TO STRIKE CLASS ALLEGATIONS AND DEMAND FOR JURY TRIAL, TO COMPEL ARBITRATION, AND TO STAY ACTION**

/ / /

/ / /

/ / /

/ / /

/ / /

Defendant WorldRemit Corp., d/b/a "Sendwave" ("WorldRemit") hereby moves to strike the class allegations and jury demand asserted by Plaintiff Sunday Egahi ("Mr. Egahi"), compel binding arbitration of Mr. Egahi's individual claims, and stay this action pending arbitration.

This Motion is made pursuant to Local Rule 105 and is based on the following Memorandum of Points and Authorities and supporting documentation, the papers and pleadings on file in this action, and any oral argument this Court may allow.

DATED this 14th day of July, 2025.

*/s/ Patrick J. Reilly*
Richard B. Benenson, Esq.
Maryland Bar No. 9612170066
BROWNSTEIN HYATT
FARBER SCHRECK, LLP
1155 F Street N.W., Suite 1200
Washington, DC 20004
Telephone: 202.296.7353
Facsimile: 202.296.7009
rbenenson@bhfs.com

Patrick J. Reilly, Esq. (*pro hac vice*)
BROWNSTEIN HYATT
FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone: 702.382.2101
Facsimile: 702.382.8135
preilly@bhfs.com

Sarah J. Auchterlonie, Esq. (*pro hac vice*)
BROWNSTEIN HYATT
FARBER SCHRECK, LLP
675 15th Street, Suite 2900
Denver, Colorado 80202-4287
Telephone: 303.223.1100
Facsimile: 303.223.1111
sauchterlonie@bhfs.com

*Attorneys for WorldRemit Corp.*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS AND DEMAND FOR JURY TRIAL, TO COMPEL ARBITRATION, AND TO STAY ACTION PENDING ARBITRATION**

**I.**

## INTRODUCTION

This is a putative class action brought under the Electronic Funds Transfer Act (the "EFTA") as well as various (and mostly unspecified) state laws. Mr. Egahi alleges violations of these various laws based exclusively on a Consent Order issued in 2023 by the Consumer Financial Protection Bureau (the "CFPB") against Chime, Inc. dba Sendwave ("Chime").[1] His principal claim is that although he received funds from the CFPB settlement, the fund amount did not meet his expectations.

Mr. Egahi generically references four claimed online "misrepresentations" that are years old and predate the CFPB Consent Order. Notably, two of those claimed misrepresentations are not even attributable to Chime. And, despite his allegations in the Complaint, Mr. Egahi continues to use WorldRemit for his international money transfers to Nigeria and does not allege that WorldRemit engaged in any wrongful conduct since the 2023 CFPB Consent Order.

WorldRemit brings this Motion because Mr. Egahi used Chime's (and then WorldRemit's) services subject to a user agreement where he waived his right to a jury trial, waived any right to participate in a class proceeding, and agreed to have his claims heard in binding arbitration. In fact, Mr. Egahi acknowledged and agreed to these provisions as part of his use of these services over five years (where he has made nearly 100 transfers of money), where he gave his express and broad consent to arbitrate any and all disputes with WorldRemit, most recently including any "controversy, dispute, or claim between us arising out of or relating to the Services or this User Agreement."[2]

---

[1] As evidenced by the Declaration of Jonathan Barrie Morris, which is attached hereto as **Exhibit "A"**, WorldRemit acquired Chime in February 2021. The CFPB Consent Order concerns Chime's conduct that predated WorldRemit's acquisition of Chime. A copy of the Consent Order is attached hereto as **Exhibit "B"**.

[2] The claims asserted by Mr. Egahi are: COUNT I: Violation of the Electronic Fund Transfer Act, 15 U.S.C § 1693, et seq., by Misrepresentation of Fees; COUNT II: Violation of the Electronic Fund Transfer Act, 15 U.S.C § 1693, et seq., by Failing to Reimburse Consumers; COUNT III: Violation of the Electronic Fund Transfer Act, 15 U.S.C § 1693, et seq., by Misrepresentation of

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

Accordingly, WorldRemit is entitled to compel arbitration, and asks that the Court strike Mr. Egahi's class action allegations and jury demand, and stay this action pending arbitration of Mr. Egahi's individual claims.

## II.

## STATEMENT OF FACTS

1. WorldRemit provides international money transfer services to and from numerous countries around the world. Ex. A ¶ 2.

2. Mr. Egahi opened an account with Chime, Inc. dba Sendwave on or about May 18, 2020. Ex. A ¶ 9. A copy of Mr. Egahi's transaction history is attached hereto as **Exhibit "C"**.

3. When Mr. Egahi opened his account, he was advised of a Remittance Services Agreement that contained certain terms and conditions of service. A copy of the Chime terms and conditions of service existing at the time is attached to the Motion as **Exhibit "D"**.

4. By using Chime's services after being advised of the Remittance Services Agreement, Mr. Egahi accepted and agreed to the terms and conditions of service, which provided "[y]ou understand and agree that Wave may require any dispute arising from your use of the Wave Remittance Facility Application be resolved by binding arbitration. Wave may designate an arbitrator or arbitration panel located in New York, New York. Decisions of any arbitration process shall be binding on you." Ex. D ¶ 17.

5. On September 10, 2020, Chime updated its terms of service in the Remittance Service Agreement. Ex. A ¶ 12. A copy of Chime's updated terms and conditions of service is attached hereto as **Exhibit "E"**. The updated Remittance Service Agreement contained a more detailed binding arbitration agreement, as well as a jury trial waiver. *See* Ex. E ¶ 15.

6. Mr. Egahi continued to use Chime's services after the 2020 update to the Remittance Services Agreement. Ex. A ¶ 13.

---

Speed and Timing of Transfer; COUNT IV: Violation of the Electronic Fund Transfer Act, 15 U.S.C § 1693, et seq., by Requiring Waiver of Consumer Protection; COUNT V: Violation of the Electronic Fund Transfer Act, 15 U.S.C § 1693, et seq., by Imposing Limitation of Liability on Consumers; COUNT VI: Violation(s) of Each State's Consumer Protection Act(s); and COUNT VII: Violation(s) of the Maryland Consumer Protection Act Md. Ann. Code, Commercial Law, § 13-101, et seq.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

7. Chime updated its terms of service on September 15, 2021. A true and correct copy of Chime's updated terms and conditions of service is attached hereto as **Exhibit "F"**. In addition to the binding arbitration provision and jury trial waiver, the updated Remittance Services Agreement included a class action waiver. *See* Ex. F ¶ 14.

8. After the acquisition of Chime, WorldRemit updated the terms of service for its customers on January 1, 2024, and October 11, 2024. True and correct copies of these terms and conditions of service are respectively attached to the Motion as **Exhibit "G"** and **Exhibit "H"**. These two agreements do not contain arbitration provisions or class action waivers.

9. On December 19, 2024, WorldRemit updated the terms of service for its customers. A copy of WorldRemit's updated terms and conditions of service is attached hereto as **Exhibit "I"**. Paragraph 12.3 of this updated agreement contains an arbitration agreement, class action waiver, and jury trial waiver:

> **Arbitration.** You and WorldRemit agree that any Claim will be settled by binding arbitration, except that each party retains the right to bring an individual action in small claims court. If a party elects arbitration, the arbitration will be administered by American Arbitration Association (the "AAA"), an established alternative dispute resolution provider, under its Consumer Arbitration Rules. The AAA Consumer Arbitration Rules are available at adr.org. You and WorldRemit agree that each of us may bring claims against each other only on an individual basis and not on a class, representative, or collective basis. **You acknowledge and agree that you and WorldRemit are each waiving the right to a trial by jury or to participate as a plaintiff or class member in any purported class action or representative proceeding.**

Ex. I at WRC_000150 (emphasis in original). The term "Claim" is defined to include "[a]ny controversy, dispute, or claim between us arising out of or relating to the Services or this User Agreement." *Id.* at WRC_000149.

10. For each of the foregoing updates to the Chime and WorldRemit terms and conditions, Mr. Egahi—like all customers—was advised of the changes to the terms of service via email. Ex. A ¶ 17.

/ / /

/ / /

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

11. By continuing to use Chime's (and WorldRemit's) services after being advised of the updated terms of service, Mr. Egahi acknowledged and agreed to the updated terms. Ex. A ¶ 18.

12. Since opening his account in 2020, Mr. Egahi has made more than 200 transfers, all of them to Nigeria. Ex. A ¶ 19.

13. Even since entry of the Chime Consent Order referenced in the Complaint, Mr. Egahi has continued to use WorldRemit, initiating at least 72 electronic payments after October 16, 2023. Ex. A ¶ 20.

14. Mr. Egahi also has used WorldRemit numerous times, and continues to use WorldRemit, even since issuance of the most recent WorldRemit Corp. User Terms and Conditions on December 19, 2024. Ex. A ¶ 21.

***The CFPB Consent Order***

15. On October 16, 2023, Chime entered into a compromised public Consent Order with the CFPB. Ex. B. The Consent Order alleged *inter alia* that Chime violated the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5531(a), 5536, prior to its acquisition by WorldRemit by making misleading statements in advertisements regarding the speed and cost of its remittance transfers. Ex. B ¶¶ 15-17.

16. Chime did not admit or deny any of the findings of fact or conclusions of law, except that it admitted the facts necessary to establish the Bureau's jurisdiction over Chime and the subject matter of the action. Ex. B ¶ 2.

17. As part of the Consent Order, Chime agreed to reserve a total of $1,424,268.32 to provide redress to certain affected consumers (as defined in the Consent Order, the "Affected Consumers"). Ex. B ¶ 95.

18. As the acquirer of Chime, WorldRemit timely paid the sum of $1,300,000 to alleged Affected Consumers, including the sum of $14.79 to Mr. Egahi. Ex. A ¶ 7.

19. Also as a result of the Chime acquisition by WorldRemit and the Consent Order, WorldRemit has ensured its practices meet the CFPB's expectations concerning (a) how transfer

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

fees are communicated and disclosed where applicable prior to the initiation of a transfer by a consumer; and (b) how it advertises the estimated speed of remittance transfers. Ex. A ¶ 8.

***Mr. Egahi's Claims for Relief***

20. Mr. Egahi's claims largely bootstrap the Consent Order, so much so that he does not appear to genuinely allege that he made transfers at any specific time through WorldRemit because of any specific misrepresentation. Rather, he simply cites to four alleged misrepresentations that he found on the internet. *See generally* Complaint.[3] Indeed, Mr. Egahi's continued use of WorldRemit to transfer funds to Nigeria strongly suggests that his claims are opportunistic, based solely upon the Consent Order, hoping to cash in on a class action after the fact.

## III.

## LEGAL ARGUMENT

### A. WorldRemit Is Entitled to an Order Compelling Arbitration and Striking the Jury Demand.

Federal law provides as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Proceedings that are subject to arbitration pursuant to a written agreement shall be stayed "until such arbitration has been had in accordance with the terms of the agreement…." 9 U.S.C. § 3. In addition, a party may move for "an order directing that such arbitration proceed in the manner provided for in such agreement. 9 U.S.C. § 4.

/ / /

[3] Two of the four cited "misrepresentations" cited in the Complaint are not even attributable to Chime. All four stretch well before the one year EFTA statute of limitations and entry of the Consent Order. *See* 15 U.S.C. § 1693m(g). A simple review of WorldRemit's website makes it clear that fees are clearly disclosed before each transaction, along with the expected speed of the transfer. *See, e.g.*, https://www.worldremit.com/en/nigeria.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

"To begin with, it is well established that whether the parties have submitted a particular dispute to arbitration is undeniably an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Del Webb Communities, Inc. v. Carlson*, 817 F.3d 867, 874 (4th Cir. 2016) (quotation omitted). As stated by the Fourth Circuit:

> The FAA reflects a liberal federal policy favoring arbitration agreements. Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation. Accordingly, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citations and quotations omitted). Arbitration is a "matter of contract" where courts apply state law contract principles governing the formation of contracts to assess whether they are enforceable. *Meadows v. Cebridge Acquisition, LLC*, 132 F. 4th 716, 726 (4th Cir. 2025).[4] Accordingly, this Court must give weight to the "clear federal directive in support of arbitration." *Id.*, quoting *Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001).

This Court's own jurisprudence is in accord. For example, this Court compelled arbitration in *Seney v. Rent-A-Center, Inc.*, 909 F. Supp.2d 444 (D. Md. 2012) (Bredar, J.), a case involving a consumer furniture rental contract and claims arising under the Magnuson-Moss Warranty Act. Citing *Adkins*, this Court stated that a "district court must grant a petition to compel arbitration where a valid arbitration agreement exists and the issues presented in the case fall within the scope of that agreement." 909 F. Supp.2d 444 (D. Md. 2012). This Court further noted that the FAA was expressly intended to "reverse centuries of judicial hostility to arbitration agreements, to permit parties to avoid the costliness and delays of litigation, and to place arbitration agreements upon the same footing as other contracts." *Id.* at 450-51 (internal quotations omitted), citing *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 510-11 (1974) (citing H.R.Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924); S.Rep. No. 536, 68th Cong., 1st Sess. (1924)). "Thus, the FAA is a clear federal command that courts cannot treat arbitration in general as an inferior or less reliable means of

---

[4] According to the user agreement, the substantive law of the State of Delaware, along with the FAA, governs the user agreement.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

vindicating important substantive rights," including statutory rights. *Seney*, 909 F. Supp.2d at 451, quoting *Adkins*, 303 F.3d at 502.

This case fits squarely within the scope of the FAA. From the time Mr. Egahi opened his account in 2020, WorldRemit disclosed a user agreement that disclosed its terms, the vast majority of which included an arbitration clause. Ex. A ¶ 10; Ex. D at WRC_000150. Mr. Egahi acknowledged the user agreement and used the services of WorldRemit for approximately 5 years, ratifying the issuance of updated terms each time one was issued. *See* Exs. A, C-I. His claims arise specifically from his use of Chimes—and then WorldRemit's—services. ECF No. 1 at ¶¶ 27-36. Accordingly, and to that extent, his claims are subject to binding arbitration, and WorldRemit seeks a stay of his individual claims. *See Smith v. Spizzirri*, 601 U.S. 472, 476, 144 S. Ct. 1173, 1177 (2024).[5]

The individual claims that must be arbitrated include Mr. Egahi's claims under the EFTA. Plaintiff here may point to an EFTA section called "Waiver of Rights," 15 U.S.C. § 1693l, which prohibits covered persons from forming an agreement between a consumer and any other person that contains any provision which constitutes a waiver of any right conferred or cause of action created by EFTA. However, the U.S. Supreme Court in *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 132 S. Ct. 665, 181 L.Ed.2d 586 (2012), considered an even more strongly-worded anti-waiver position in the Credit Repair Organization Act ("CROA"), and determined that the language could not supersede an arbitration agreement. *Id.* at 102, 132 S. Ct. 665. The Court reasoned that had Congress meant to prohibit very common arbitration provisions in the CROA, it would have done so in a manner less obtuse than what appeared in the statutory text. Likewise, as the Court ruled in *CompuCredit,* because the EFTA is silent on whether claims under the Act can proceed in an arbitral forum, the FAA requires the arbitration agreement to be enforced according to its terms. *See Id*.

/ / /

---

[5] To the extent Mr. Egahi elects to pursue his individual claims in small claims court as allowed in the most recent user agreement, this action should be dismissed without prejudice in its entirety rather than stayed.

In a similar vein, Mr. Egahi's demand for a jury trial must be stricken. Obviously, when considered with the arbitration agreement, he has waived his right to a jury trial. *See, e.g., Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 307 (4th Cir. 2001) ("Thus, the 'loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate.'"). Even standing on its own, the jury trial waiver is independently enforceable. Courts "routinely enforce jury trial waivers." *In re DaimlerChrysler AG Sec. Litig.*, 2003 WL 22769051 (D. Del. Nov. 19, 2003) (unpublished) (applying Delaware law).

**B. Mr. Egahi's Class Action Allegations Should Be Stricken.**

Through five user agreements, Mr. Egahi waived his right to participate in a class action, including the most recent user agreement that he entered into prior to filing this lawsuit. *See* Exhibits E, F, and I. Most recently, Mr. Egahi and WorldRemit agreed "that each of us may bring claims against each other only on an individual basis and not on a class, representative, or collective basis." Exhibit I ¶ 12.33. Additionally, Mr. Egahi acknowledged and agreed that he "**and WorldRemit are each waiving the right to a trial by jury or to participate as a plaintiff or class member in any purported class action or representative proceeding**." *Id.* (emphasis in original).

The United States Supreme Court has consistently upheld the validity of class action waivers, emphasizing that requiring the availability of classwide arbitration interferes with the fundamental attributes of arbitration, such as its informality, speed, and cost-effectiveness. In *AT&T Mobility LLC v. Concepcion*, the Court held that the FAA preempts state laws that prohibit class action waivers in arbitration agreements, as such prohibitions are inconsistent with the FAA's objectives. 563 U.S. 333, 343 (2011). Similarly, in *American Exp. Co. v. Italian Colors Restaurant*, the Court reinforced that arbitration is a matter of contract and that class action waivers are enforceable even if the costs of individual arbitration exceed potential recovery. 570 U.S. 228, 233 (2013).

/ / /

/ / /

/ / /

/ / /

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

## IV.

## CONCLUSION

Accordingly, WorldRemit respectfully requests that this Court compel arbitration of all individual claims against by Mr. Egahi and strike his jury demand, strike all class allegations in their entirety, and stay this action pending the conclusion of arbitration.

WorldRemit thanks the Court for its time and attention to this matter.

DATED this 14th day of July, 2025.

*/s/ Patrick J. Reilly*
Richard B. Benenson, Esq.
Maryland Bar No. 9612170066
BROWNSTEIN HYATT
FARBER SCHRECK, LLP
1155 F Street N.W., Suite 1200
Washington, DC 20004
Telephone: 202.296.7353
Facsimile: 202.296.7009
rbenenson@bhfs.com

Patrick J. Reilly, Esq. (*pro hac vice*)
BROWNSTEIN HYATT
FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone: 702.382.2101
Facsimile: 702.382.8135
preilly@bhfs.com

Sarah J. Auchterlonie, Esq. (*pro hac vice*)
BROWNSTEIN HYATT
FARBER SCHRECK, LLP
675 15th Street, Suite 2900
Denver, Colorado 80202-4287
Telephone: 303.223.1100
Facsimile: 303.223.1111
sauchterlonie@bhfs.com

*Attorneys for WorldRemit Corp.*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

**CERTIFICATE OF SERVICE**

Pursuant to Local Rule 102.1.d of the U.S. District Court of Maryland General Filing and Service Requirements, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **MOTION TO STRIKE CLASS ALLEGATIONS AND DEMAND FOR JURY TRIAL, TO COMPEL ARBITRATION, AND TO STAY ACTION** was served via electronic service on the 14th day July, 2025, to all parties on the CM/ECF service list below:

Joshua G. Whitaker, Esq.
Edward N. Griffin, Esq.
ADELPHI LAW
2306 Wineberry Terrace
Baltimore, MD 21209
whitaker@adelphilaw.com
griffin@adelphilaw.com

*Attorneys for Plaintiff*

*/s/ Dominique Hoskins*
Dominique Hoskins, an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP