Richard B. Benenson, Esq.
Maryland Bar No. 9612170066
BROWNSTEIN HYATT FARBER SCHRECK, LLP
1155 F Street N.W., Suite 1200
Washington, DC 20004
Telephone: 202.296.7353
Facsimile: 202.296.7009
rbenenson@bhfs.com

Patrick J. Reilly, Esq. (*pro hac vice*)
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone: 702.382.2101
Facsimile: 702.382.8135
preilly@bhfs.com

Sarah J. Auchterlonie, Esq. (*pro hac vice*)
BROWNSTEIN HYATT FARBER SCHRECK, LLP
675 15th Street, Suite 2900
Denver, Colorado 80202-4287
Telephone: 303.223.1100
Facsimile: 303.223.1111
sauchterlonie@bhfs.com

*Attorneys for WorldRemit Corp.*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

# UNITED STATES DISTRICT COURT

# DISTRICT OF MARYLAND

SUNDAY EGAHI, individually and on behalf of similarly-situated persons,

Plaintiff,

v.

WORLDREMIT CORP.,

Defendant.

Case No. 1:24-cv-03728-JKB

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS AND DEMAND FOR JURY TRIAL, TO COMPEL ARBITRATION, AND TO STAY ACTION**

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

# REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS AND DEMAND FOR JURY TRIAL, TO COMPEL ARBITRATION, AND TO STAY ACTION

## I.

## INTRODUCTION

Plaintiff's Opposition is without merit. He argues that he did not "see" or "affirmatively" agree to the terms and conditions of the various user agreements. However, he does not dispute that he received the user agreements by email. Rather, he chose not to view them. Yet for years he used the services provided by Sendwave, and later WorldRemit. He continues to use those services to this day, obtaining the benefits of WorldRemit's services without acknowledging the two-way street built by those user agreements.

Plaintiff also ignores the strong policy favoring arbitration in the Federal Arbitration Act. He selectively pulls provisions from older user agreements to argue against enforceability of arbitration. Some of those older provisions have nothing to do with arbitration. And, all of those provisions have been superseded by subsequent amendments, namely, the two most recent versions from 2024, both implemented prior to the filing of this lawsuit. Plaintiff does not challenge the enforceability of those most recent agreements—he simply argues his claims do not fall within their scope. In that regard, Plaintiff contradicts himself about when his claims accrued. Regardless, case law directs that implementation of a new user agreement such as this supersedes the terms of the prior agreement. Particularly where Plaintiff continues to use WorldRemit's services to this day and enjoys the benefits of its services, he should be bound by the existing agreement.

In addition, Plaintiff argues that WorldRemit unduly delayed in moving to compel arbitration, and that all relief requested is untimely. Plaintiff never explains why the requests to strike the class action claims and jury demand are untimely, other than observing that those provisions are generally contained within the various arbitration provisions. Case law, however, directs that motions to strike class action allegations and jury demands may be filed much later in a case such as this. And he is simply incorrect when he argues that the request to arbitrate is too late.

Finally, Plaintiff takes umbrage to some of WorldRemit's comments in its Motion. No offense was intended, though it is incumbent to note that there is no parade of plaintiffs seeking relief from WorldRemit. A single plaintiff among the entire county is asserting EFTA claims that he now acknowledges are barred by the statute of limitations. He also asserts in his Complaint state law claims _in all 50 states_, though he does not bother to reference any of those state laws except Maryland, and does not seem to have even researched which states actually have EFTA parallel laws. Most do not. Mr. Egahi's grievance is that he did not receive a full refund of every single fee ever incurred since 2020, never explaining what representations he actually relied on each time he made a funds transfer. So, yes, this is an "opportunistic" lawsuit which seems to be driven by the desire to monetize it as a class action rather than obtain meaningful relief.

Accordingly, WorldRemit urges this court to compel arbitration, strike the class action allegations and jury demand, and stay the action pending conclusion of arbitration.

## II.

## LEGAL ARGUMENT

### A. Plaintiff's Use of Services Renders His Claims Subject to the Terms and Conditions of Service.

Plaintiff initially seeks to avoid being subject to the terms of the user agreements by arguing that he never saw or "affirmatively accepted" them. ECF No. 20 at p. 2, ¶ 5. In support of this argument, Pages 2 and 8 of the Opposition briefly reference a pre-litigation "Declaration of Sunday Egahi." The declaration, however, is not attached as evidence. Nor did Plaintiff include a copy of this declaration in his initial disclosure of documents. *See* Initial Disclosure attached hereto as **Exhibit "A"**.

It is unclear why Mr. Egahi would have signed a declaration _back in August 2024_ asserting that he never saw or agreed to a single user agreement. The date of the purported declaration (according to the Opposition brief) is more than four months prior to filing his lawsuit and 11 months prior to the filing of WorldRemit's Motion. It is particularly troubling that Plaintiff contends he signed a declaration under penalty of perjury claiming he did not see or "affirmatively" accept the terms of service for user agreements dated October 11, 2024, and December 19, 2024

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

(ECF Nos. 15-8 and 15-9), when his purported declaration was executed months before two of these agreements were even implemented.

Regardless, the declaration referenced in the Opposition has not been submitted as evidence, and the unsupported argument must therefore be disregarded. *See, e.g., U.S. v. Lighty*, 616 F.3d 321, 362 (4th Cir. 2010) (arguments of counsel are not evidence); *see also Painter v. Baltimore Cnty., Md.*, 535 F. Supp. 321 (D. Md. 1982) (summary judgment granted after non-moving party's failure to respond to affidavit with contrary evidence).

Separately, Plaintiff's factual assertion is somewhat misleading. He claims to have not "seen" the terms of service but does not dispute that, upon opening his account and with each update, he was sent an email notifying him each time of those terms and conditions. *Cf.* ECF No. 15-1 at ¶¶ 9-18. He is notably silent as to whether he opened those emails or actually read the terms contained therein. He also cleverly contends that he never "affirmatively" agreed to the terms and conditions, yet does not dispute that he continued to use Sendwave's (and then WorldRemit's) services after receiving those emails expressly advising him of the terms and conditions, including each time those terms and conditions were updated.

These terms of service provide specific and prominent instructions that continued use of services constitutes agreement with the terms and conditions. For example, in the two most recent versions of the user agreement:

> These User Terms and Conditions ("User Agreement") are effective as of 11 October 2024. This User Agreement is a contract between you and us. It describes the terms and conditions by which you will be bound when you use the services accessible at one or more of our Channels including the WorldRemit App and the Sendwave App ("Services"). <u>*Do not use the Services if you do not agree to be bound by this User Agreement. By using the Services you are agreeing to the terms and conditions of this User Agreement.*</u>

ECF No. 15-8 at p. 2 (emphasis added).

> These User Terms and Conditions ("User Agreement") are effective as of 19th December 2024. This User Agreement is a contract between you and us. It describes the terms and conditions by which you will be bound when you use the services accessible at one or more of our Channels including the WorldRemit App and the Sendwave App ("Services"). <u>*Do not use the Services if you do not agree to be bound by this User Agreement. By using the*</u>

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

> *Services you are agreeing to the terms and conditions of this User Agreement*.

ECF No. 15-9 at p.2 (emphasis added); *see also* ECF No. 15-5 p. 2, ECF No. 15-6 at p. 2, and ECF No. 15-7 at pp. 8-10. In fact, WordRemit's current User Terms and Conditions has been posted on its internet webpage in addition to being provided to Plaintiff last December. https://www.worldremit.com/en/about-us/terms-and-conditions (last accessed Aug. 12, 2025). Prior versions of the user agreement were similarly posted on the Internet.

Given these facts, Plaintiff's constructive knowledge of those terms and conditions (and his assent thereto) is without reasonable dispute.[1] *See Fjeta v. Facebook, Inc.*, 841 F. Supp. 2d 829, 838-41 (S.D.N.Y. 2012) (online forum selection clause enforceable when reasonably communicated to customer); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148-49 (7th Cir. 1997) (arbitration clause in product documents enforced even though plaintiff did not read them). Here Plaintiff cites to *Virginia Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*, 984 F.2d, 118-19 (4th Cir. 1993), contending the case supports his argument regarding lack of consent. The case, however, does not support that argument. Rather, *Virginia Carolina* Tools is about the interpretation of an arbitration provision, and whether it was still in force of effect. *See* 984 F. 2d at 118-19.

Accordingly, Plaintiff assented and agreed to the terms of service.

**B. WorldRemit's Motion Is Timely.**

Much of Plaintiff's Opposition argues that WorldRemit's Motion is untimely. In furtherance of this argument, it details an elaborate timeline purportedly showing what occurred prior to the filing of this Motion. Plaintiff is correct that WorldRemit did not file this Motion with its first appearance. Nor did it include arbitrability as an affirmative defense in its answer. Significantly, however, WorldRemit raised the issue of mandatory arbitration with Plaintiff shortly thereafter. In a letter dated May 6, 2025, the undersigned counsel presented an offer of judgment to Plaintiff and expressly noted it was preparing a motion to compel arbitration that it would file absent a settlement of the case. A partially redacted copy of this letter (without attached offer) is

[1] Plaintiff lets the issue rest after two brief references on pages 2 and 8 of his brief, with no legal discussion whatsoever as to assent or agreement to the terms of service.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

attached hereto as **Exhibit "B"**. This was the same day WorldRemit served written discovery for the first time. *See id.*

Plaintiff responded to this letter, but noticeably ignored the demand to arbitrate the case. *See* email (May 14, 2025), attached hereto as **Exhibit "C"**. WorldRemit was therefore pressed to raise the issue again in a letter dated May 27, 2025, where the undersigned counsel stated:

> More importantly, you completely ignored the two most significant points of our letter: (1) your client's claims are subject to arbitration; and (2) your client's EFTA claims are time barred. You failed to provide any factual or legal authority disputing our contention that your client's federal claims must be dismissed or that his claims are subject to arbitration. These omissions are glaring and telling.
>
> . . .
>
> Accordingly, during our conference, we will be requesting that your client stipulate to dismiss this lawsuit and proceed with arbitration, and alternatively to dismiss his EFTA claims. If your client refuses to do so, we request that the parties stipulate to stay further discovery while the Court considers whether to dismiss the lawsuit.

A copy of this letter is attached hereto as **Exhibit "D"**. After meeting and conferring, the parties agreed to disagree regarding arbitrability, and the class action and jury trial waiver, and stipulated to stay the case pending resolution of a formal motion to compel arbitration. *See* ECF No. 13.

It is therefore incorrect to suggest that WorldRemit unduly delayed in filing this Motion. Arbitrability was raised before any motion practice, before any depositions were taken, and before Plaintiff was required to respond to any written discovery. Rather, the issue was raised less than two months after filing the answer, early in discovery.

Given such facts, there can be no finding of waiver. In *Arco Nat'l Constr., LLC v. MCM Management Corp.*, 2024 WL 4041527 (D. Md. Sept. 4, 2024) (Rubin, J.), this Court concluded that a contractual arbitration right had not been waived even though the parties had engaged in "extensive litigation efforts," proceeding far further than this matter has. *See* 2024 WL 4041527, at * 9. In that case, the defendant filed an answer <u>*and*</u> counterclaim (where it sought affirmative relief from the court), engaged in substantial discovery and summary judgment motion practice, and participated in a settlement conference. *Id.* The Court explained that a party may waive a right to arbitration if it "waits too long" to assert the right and "instead engage[s] itself substantially in the

judicial forum." *Id.* In analyzing this question, Judge Rubin referenced two Maryland cases where a party had waited "almost 5 years" and another 15 months before asserting the right to arbitrate as examples of waiver. *Id.* The Court also cited to *Degidio v. Crazy Horse Saloon and Restaurant, Inc.*, 880 F.3d 135 (4th Cir. 2018), a case in which:

> Crazy Horse employed judicial proceedings to pursue a litigation strategy for over three years, and it did so to the detriment of plaintiffs in this case. Instead of filing a motion to compel arbitration <u>*at an early stage*</u> in the litigation process, Crazy Horse filed multiple motions for summary judgment, served discovery, and twice asked the district court to certify questions of state law to the South Carolina Supreme Court. This was litigation activity aimed at obtaining a favorable ruling on the merits of the case. In fact, Crazy Horse had already obtained favorable rulings from the district court to the effect that Degidio's claims for minimum wages and overtime under the SCPWA were preempted.

*Id.* at 141 (emphasis added). In contrast, Judge Rubin cited to *The Redemptorists v. Coulthard Servs., Inc.*, 145 Md. App. 116, 143, 801 A.2d 1104 (2002), as an example of a six month delay that was "understandable under the circumstances" and thus not subject to a waiver of arbitration. 2024 WL 4041527, at *9.

The delay complained of by Plaintiff was far less obtrusive than the claimed delays in *The Redemptorists* and *Arco*, cases where motions to compel arbitration were not deemed untimely. WorldRemit filed its Answer on March 10, 2025. ECF No. 3. It raised the issue of arbitration on May 6, 2025, less than two months later. *See* Exhibit B. Between May 6 and July 14, 2025, the parties discussed arbitrability as well as the filing of a motion to compel arbitration. *See* Exhibits B through D. Thereafter, the parties agreed to disagree and stipulated the stay the case pending resolution of a motion to compel arbitration. *See* ECF No. 13. During this time period, WorldRemit made good faith efforts to settle this matter while it raised the arbitrability of claims. WorldRemit's conduct during this time period plainly qualifies as the kind of "legitimate reason for participating in litigation" referenced in *ARCO*. *See* 2024 WL 4041527 at *10.

And there is no prejudice to Plaintiff. WorldRemit seeks only a stay of this lawsuit pending arbitration.[2] As a result, there is no danger of claims being lost to any statutes of limitation, and no

---

[2] Plaintiff also contends that WorldRemit waived its right to arbitration by simultaneously moving to strike the class action allegations and jury trial demand. However, Plaintiff offers no legal authority for such a proposition. Indeed, there are multiple potential results with this motion, and



BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

substantive rights will be lost. The modest discovery conducted thus far involves only initial disclosures and written discovery, which could be easily repurposed in an arbitration proceeding. And, there have been no "discovery devices that would not have been available in arbitration." *ARCO*, 2024 WL 4041527, at *10, quoting *Deutsch v. G&D Furniture Holdings, Inc.*, No. 501, Sept. term, 2016, 2017 WL 3699339, at *6 (Md. Ct. Spec. App. Aug. 28, 2017)).

Accordingly, Plaintiff's contention that WorldRemit unduly delayed in seeking arbitration is without merit.

**C. Plaintiff's Claims—All of Them—Are Subject to the Current User Agreement.**

Plaintiff's contention that not all of Plaintiff's claims are subject to the arbitration provisions of the current User Agreement is mistaken; all Plaintiff's claims are subject to arbitration based on the broad language of the integration and arbitration provisions of the current User Agreement. *See* Opposition at pp. 6-8. In *Levin v. Alms and Assocs., Inc.*, 634 F.3d 260, 269 (4th Cir. 2011), the Fourth Circuit reversed the district court's holding that an arbitration clause did not apply to claims that accrued before the execution of the agreement in which the clause appeared. The agreement in *Levin* included an integration clause providing that "[i]t is agreed by and between the parties hereto that this agreement encompasses and embodies all terms, understandings and agreements by and between those parties and the terms may not be amended except in writing by the parties hereto." *Id.* at 266. The arbitration clause in the same agreement stated that "[*a*]*ny dispute shall be submitted to binding arbitration* before a single arbitrator in Howard County, Maryland, under the rules of the American Arbitration Association, and the decision of the arbitrator shall be final and binding upon the parties." *Id.* (emphasis in original).

In reaching its conclusion that the *Levin* agreement's arbitration clause applied retroactively, the Fourth Circuit reasoned that "the integration and arbitration clauses [of the agreement] can easily be read together to state that the 'agreement encompasses and embodies all terms, understandings and agreements by and between [the] parties' and that '[a]ny dispute shall be submitted to binding arbitration.'" *Id.* at 267 (last alteration in original). In the court's view,

---

if this Court does not compel arbitration, for whatever reason, it should nevertheless strike the jury demand and class action allegations. *See supra* Sections II.E and II.F.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

"[t]he language [was] broad enough to encompass *all* agreements and *any* disputes, past and present, especially given that the presumption in favor of arbitrability is particularly applicable when the arbitration clause is broadly worded." *Id.* (emphases in original). Significantly, the court observed that, "[a]lthough the arbitration clause does not specifically state that it applies to claims accruing before the 2007 Agreement, courts have generally applied broad 'any dispute' language retroactively, especially when combined with language that refers to all dealings with the parties." *Id.*

Like the agreement in *Levin*, the current User Agreement contains integration and arbitration clauses that, combined, have the effect of broadly subjecting to arbitration claims accruing both before and after the execution of the User Agreement. *See* Motion, Ex. I (ECF No. 15-9). Paragraph 15.3 of the User Agreement, the integration clause, provides that "[t]his User Agreement <u>*constitutes the entire agreement between you and WorldRemit and governs your use of the Services, superseding any prior agreements between you and WorldRemit*</u>." *Id.* at p. 14 (emphasis added). Paragraph 12.3 of the User Agreement, the arbitration clause, states that "[Plaintiff] and WorldRemit agree that *any* Claim will be settled by binding arbitration, except that each party retains the right to bring an individual action in small claims court." *Id.* at p. 11. (emphasis added).[3] "Claim" is defined earlier in the User Agreement as "[*a*]*ny* controversy, dispute, or claim between us arising out of or relating to the Services under this User Agreement[.]" *Id.* at WRC_000149, ¶12.1 (emphasis added).

Also like the agreement in *Levin*, the arbitration clause in the User Agreement does not specifically state that it applies retroactively. However, the expansive use of "any"—in both the arbitration clause and definition of "Claim"—necessitates that the User Agreement be interpreted broadly (consistent with the FAA) to encompass "*all* agreements and *any* disputes, past and present, especially given that the presumption in favor of arbitrability is particularly applicable when the arbitration clause is broadly worded." *Levin*, 634 F.3d at 267 (emphases in original).

---

[3] Per Section 12.4, to the extent any portion of the arbitration agreement is not enforceable, Plaintiff is required to bring his claims in a court of competent jurisdiction in Wilmington, Delaware. ECF No. 15-9 at p. 11.

Thus, Plaintiff's attempt to exclude some claims from the scope of the arbitration clause is unpersuasive. All of Plaintiff's claims are subject to arbitration consistent with *Levin* and the expansive use of "any" in the arbitration clause.

**D. The User Agreements Are Enforceable.**

Plaintiff next argues that the user agreements are "unconscionable" and "illegal." He relies on the CFPB Consent Order and its finding that provisions *unrelated* to the arbitration provisions in earlier user agreements were "in violation of the EFTA and the CFPA." Opposition at p. 19. Plaintiff does not explain how those findings affect the enforceability of other contract provisions, such as the arbitration provisions, class action waivers, or the jury waiver. Nor does Plaintiff explain how the CFPB Consent Order affects the more recent user agreements which were introduced and agreed to by Plaintiff *after* the Consent Order was issued. *Cf* ECF No. 15-2 (Oct. 16, 2023) with ECF No. 15-7 (Jan. 1, 2024), 15-8 (Oct. 11, 2024), and 15-9 (Dec. 19, 2024).

Setting that aside, Plaintiff's unconscionability and impossibility arguments seem to stem from a misunderstanding—unintentional or not—as to the procedure to be implemented in arbitration. The two most recent user agreements—which supersede the prior agreements—provide that arbitration is to be governed by AAA, not NAF, pursuant to AAA's Consumer Arbitration Rules. ECF No. 15-8 at p. 11 and ECF No. 15-9 at p. 11. Accordingly, there is no requirement that Plaintiff pay the cost of arbitration as he might in a commercial dispute. Instead, AAA's Consumer Arbitration Rules generally provide that a consumer's share of arbitration fees is nominal—a $225 filing fee at the outset—with all other fees paid by the respondent. *See* AAA Consumer Arbitration fee Schedule attached hereto as **Exhibit "E"**. Plaintiff further exhausts himself discussing the evils of NAM as the arbitration provider, describing it as "a company that is biased against consumers." Here too, Plaintiff fails to appreciate that the most recent user agreements require AAA, not NAF, and that arbitration, if compelled, would be directed to AAA, not NAF.

Plaintiff fails to suggest any way in which the user agreements compelling AAA Consumer Arbitration are unconscionable. Regardless, courts have rejected arguments that an agreement compelling AAA Consumer Arbitration is unfair to the consumer. *See, e.g., Nezri v. PayPal, Inc.,*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

606 F. Supp. 3d 985, 995 (C.D. Cal. 2022).[4]

Plaintiff also contradicts himself in multiple respects. First, his chart on pages 5 and 6 of his Opposition assert that no relevant transactions fall within the term of the two most recent user agreements (ECF Nos. 15-8 and 15-9). Yet, on the first page of his Opposition, Plaintiff asserts that this action "concerns remittances that occurred in late 2021 *through December of 2024*…." So, it appears the two most recent user agreements do, in fact cover claims brought by Plaintiff in this action. Second, Plaintiff argues that this Court has "no other option" but to compel the appointment of NAF as arbiter of this dispute such that this Court must then refuse to enforce the provision. *See* Opposition at p. 9. Plaintiff cannot pick and choose superseded provisions at his whim based upon which provisions he likes. The forum for arbitration was changed to AAA with the last two user agreements. He has continued to use WorldRemit's services as a condition of those changes, and he should be bound by that change.

The underlying argument, however, misses the point. Plaintiff suggests that claims arising between January 1 and October 10, 2024, are not arbitrable because the January 1, 2024 user agreement does not contain an arbitration provision within it, even though the other agreements do. Again, this is inconsistent with *Levin*. And other courts are in accord, holding that amendments to online user agreements result in the latter terms superseding the former. *See Suski v. Coinbase, Inc.*, 55 F.4th 1227 (9th Cir. 2022). In *Suski*, a cryptocurrency exchange offered a sweepstakes which allegedly violated California's Unfair Competition Law. When Coinbase sought to compel arbitration of class claims based upon an online user agreement, the court held that a judicial forum selection clause contained in the sweepstake's rules superseded the arbitration provision. 55 F.4th at 1231. "The district court correctly ruled that because the User Agreement and the Official Rules conflict on the question whether the parties' dispute must be resolved by an arbitrator or by a California court, the Official Rules' forum selection clause supersedes the User Agreement's arbitration clause." *Id.*

So while Plaintiff believes he can pick and choose the user agreement that is most

---

[4] The *Nezri* case similarly rejects the proposition that a form agreement compelling arbitration is not, standing alone, unenforceable. 606 F. Supp. 3d at 993-94.



BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

preferential to his cause, it is the most recent user agreement that governs the parties' relationship. *Sisko*, 55 F.4th at 1231. It is undisputed that Plaintiff continued to use WorldRemit's services, and continues to do so today, even after filing this lawsuit.

**E. The Class Action Waivers Are Enforceable.**

Plaintiff argues that the class action waiver is unenforceable, but barely discusses the enforceability of the class action waiver in his Opposition brief. *See* ECF No. 20 at pp. 17-18. His sole argument on this point is that a class action waiver cannot be enforced because the EFTA references class actions.[5] Plaintiff offers no case law in support of his argument, and says nothing of how this reasoning applies to his state law claims, particularly where state statutes do not reference class actions.

15 U.S.C. §§ 1693l and 1693m do not guarantee class certification in any way. As with any class action, one must meet the threshold requirements of law to obtain class certification. And, significantly, these statutes contain no prohibition whatsoever against class action waivers. Under the well-known statutory canon *expressio unius est exclusio alterius* (the expression of one thing implies the exclusion of others), the absence of any provision barring class action waivers in the EFTA directs a conclusion that no such prohibition exists. Scalia & Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107 (2012).

Essentially, by making this argument, Plaintiff urges this Court to rewrite both statutes to add a bar against class action waivers where none exists, simply because the EFTA references class actions in its text. Such reasoning has been expressly rejected by the U.S. Supreme Court. In *American Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013), an antitrust case, the Court enforced a class action waiver because there was no express Congressional intent prohibiting class waivers. "Nor does congressional approval of Rule 23 establish an entitlement to class proceedings for the vindication of statutory rights. To begin with, it is likely that such an entitlement, invalidating private arbitration agreements denying class adjudication, would be an 'abridge[ment]'

[5] The argument itself is a circular one. Federal Rule of Civil Procedure 23 allows for class certification in <u>*any*</u> civil action in which its certification requirements are met. Using Plaintiff's logic, class action waiver could never be enforced because Rule 23 applies to all civil actions, not just those brought under the EFTA.



BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

or 'modif[ication]' of a 'substantive right' forbidden to the Rules, see 28 U.S.C. § 2072(b). But there is no evidence of such an entitlement in any event." 570 U.S. at 235. Thus, the primary argument of Plaintiff against enforcement of a class action waiver fails as a matter of law.

Plaintiff completely ignores *Italian Colors* in its Opposition brief. Plaintiff similarly ignores *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), another U.S. Supreme Court case upholding the enforceability of class action waivers. In that case, California courts had refused to enforce class action waivers in consumer contracts as unconscionable. *See id.* at 340-41. The Court held that the Federal Arbitration Act preempts state laws that prohibit class action waivers in arbitration agreements, as such prohibitions are inconsistent with the FAA's objectives. *See id.* at 346-52.

Plaintiff's argument here is particularly dubious given the fact that Congress in 2017 invoked the Congressional Review Act to invalidate a CFPB proposed regulation that would have restricted class action waivers in consumer financial contracts like the ones at issue in this case. *See* P.L. 115-74 (Nov. 1, 2017) (joint resolution that CFPB rule related to arbitration agreements "shall have no force or effect").[6] Obviously, when Congress overturned the CFPB's proposed regulation barring class action waivers, it expressed an intent that class action waivers are indeed enforceable. Such an override is constitutional and a valid exercise of congressional power. *See Citizens for Constitutional Integrity v. United States*, 57 F. 4th 750, 763-64 (10th Cir. 2023).

Plaintiff also contends that assertion of the class action waiver is untimely simply because assertion of the right to arbitrate is purportedly untimely. Setting aside that Plaintiff is incorrect when he asserts the motion to compel arbitration is untimely (*see* infra), Plaintiff offers no legal support for the argument that a motion to strike class actions must be made at the beginning of the case. WorldRemit is unaware of any such legal authority. There was certainly no such deadline set by this Court. And there seems to be no question that WorldRemit could raise this defense in

---

[6] https://www.govinfo.gov/content/pkg/FR-2017-11-22/pdf/2017-25324.pdf (last accessed Aug. 13, 2015) ("[T]he arbitration agreements rule would have prohibited providers from using a predispute arbitration agreement to block consumer class actions in court and would have required providers to include a provision reflecting this limitation in arbitration agreements they entered into.").

response to a motion to certify the class, which would be much later in these proceedings. *See, e.g., Bombin v. Southwest Airlines Co.*, 2023 WL 5832166, at * 11 (E.D. Pa. Sept. 7, 2023) (unpublished).[7] That being said, Plaintiff WorldRemit *did* raise as an affirmative defense in its Answer that class action claims "are not appropriate for class certification." ECF No. 3 at 1-3.

Therefore, there is no legal authority presented by Plaintiff that would prevent enforcement of the class action waiver. Plaintiff raises one lone issue on this point—that a class action cannot be waived as a matter of law because the EFTA expressly references class actions in the statutory scheme. That point is unsupported by any case law. Moreover, Congress's override of a proposed CFPB regulation that would have banned class action waivers in consumer financial contracts makes it clear that such waivers are enforceable. Enforcement of the class action waiver would not rob Plaintiff of any substantive rights, as WorldRemit does not argue that his EFTA claims or state law claims are barred by that waiver. Because Plaintiff assented and agreed to terms of service where he waived his right to participate in a class action on four occasions (ECF Nos. 15-5 at p. 8, 15-6 at p. 9, 15-8 at p. 11, and 15-9 at p. 11), including the two most recent terms of service, his class action allegations should be denied.

**F. The Motion to Strike Jury Demand Is Timely and Enforceable.**

Plaintiff's Opposition makes only one argument unique to the jury waiver. Plaintiff contends that the request to strike the jury demand is untimely because it was not made in WorldRemit's Answer. *See* ECF No. 20 at p. 3 ¶¶ 9-10 and p. 17. Yet, there is no legal requirement that a party move to strike a jury demand in its answer or at the commencement of discovery. To the contrary, a court "has the discretion to permit a motion to strike a jury demand at any time, even on the eve of trial." *Chen v. Hunan Major Enterprise, Inc.*, 340 F.R.D. 85, 89 (S.D.N.Y. 2022) (quotation omitted). Plaintiffs must also demonstrate prejudice as a result of any delay from a motion to strike. *Id.*

---

[7] In *Bombin*, the Court expressly noted that it was required to independently look to the substance of the class action waiver before it, even though it was contained within a forum selection clause Provision. "The Court will not prevent Southwest from enforcing a class action waiver agreed to by Plaintiffs merely because it is found in a subsection titled 'forum selection.'" *Id.*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

Plaintiff does not explain why WorldRemit's request to strike the jury demand is untimely. Nor does he discuss any prejudice, much less offer any evidence of such. Any filings or proceedings that took place in this case prior to the filing of the instant Motion would have taken place regardless of whether WorldRemit had moved to strike the jury demand with its initial appearance. Moreover, courts will sometimes deny a motion to strike a jury demand at this stage of a case as premature. *See, e.g., Dahhane v. Statnton*, 2015 WL 5009642, at *4 (D. Minn. Aug. 24, 2015) ("whether a right to jury trial exists in this matter must properly await further discovery and possible dispositive motion practice"); *General Inv. Co. of Conn. v. Ackerman*, 37 F.R.D. 38, 40 (S.D.N.Y. 1964) (motion to strike jury trial premature "at this early juncture of the case."). Accordingly, separate from the arbitrability of this case, there is no reason not to enforce the jury trial waiver.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

## III.

## CONCLUSION

Accordingly, WorldRemit respectfully requests that this Court stay this action, compel arbitration, and strike Plaintiff's class action claims and jury demand.

DATED this 18th day of August, 2025.

*/s/ Patrick J. Reilly*

Richard B. Benenson, Esq.
Maryland Bar No. 9612170066
BROWNSTEIN HYATT
FARBER SCHRECK, LLP
1155 F Street N.W., Suite 1200
Washington, DC 20004
Telephone: 202.296.7353
Facsimile: 202.296.7009
rbenenson@bhfs.com

Patrick J. Reilly, Esq. (*pro hac vice*)
BROWNSTEIN HYATT
FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone: 702.382.2101
Facsimile: 702.382.8135
preilly@bhfs.com

Sarah J. Auchterlonie, Esq. (*pro hac vice*)
BROWNSTEIN HYATT
FARBER SCHRECK, LLP
675 15th Street, Suite 2900
Denver, Colorado 80202-4287
Telephone: 303.223.1100
Facsimile: 303.223.1111
sauchterlonie@bhfs.com

*Attorneys for WorldRemit Corp.*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

**CERTIFICATE OF SERVICE**

Pursuant to Local Rule 102.1.d of the U.S. District Court of Maryland General Filing and Service Requirements, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS AND DEMAND FOR JURY TRIAL, TO COMPEL ARBITRATION, AND TO STAY ACTION** was served via electronic service on the 18th day August, 2025, to all parties on the CM/ECF service list below:

Joshua G. Whitaker, Esq.
Edward N. Griffin, Esq.
ADELPHI LAW
2306 Wineberry Terrace
Baltimore, MD 21209
whitaker@adelphilaw.com
griffin@adelphilaw.com

*Attorneys for Plaintiff*

*<u>/s/ Dominique Hoskins</u>*
Dominique Hoskins, an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP

**INDEX OF EXHIBITS**

| Exhibit | Description | Page No. |
|---|---|---|
| A | Plaintiff's Rule 26(a)(1) Disclosures | 001 – 004 |
| B | Letter, dated May 6, 2025 | 005 – 007 |
| C | Email Exchange, dated May 14, 2025 | 008 – 010 |
| D | Letter, dated May 27, 2025 | 011 – 015 |
| E | AAA Consumer Arbitration Fee Schedule | 016 – 020 |
| F | Declaration of Patrick J. Reilly | 021 – 023 |

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106